# UNITED STATES DISTRICT COURT

for the

Middle District of North Carolina

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br><br>1190 E. CONNECTICUT AVENUE,<br>SOUTHERN PINES, NC 28387 | )<br>)<br>)<br>)<br>)<br>) |

Case No. 1:24MJ316-1

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated by reference herein.

located in the _____ Middle _____ District of _____ North Carolina _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated by reference herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Sections 1014,<br>1341, 1343, 1344 and 1957 | False Statements in Loan Applications, Mail Fraud, Wire Fraud,<br>Bank Fraud, Transactions in Criminally Derived Property |

The application is based on these facts:

See attached affidavit incorporated by reference herein.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ George Dennis
*Applicant's signature*

George Dennis, Task Force Officer, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means)*.

Date: _____ 08/22/2024 8:31 am _____

*Judge's signature*

City and state: Durham, North Carolina

Joe L. Webster, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF 1190 E. CONNECTICUT AVENUE, SOUTHERN PINES, NC 28387** | Case No. 1:24MJ316-1 <br><br> <u>**Filed Under Seal**</u> |

### AFFIDAVIT IN SUPPORT OF
### <u>AN APPLICATION FOR A SEARCH WARRANT</u>

I, George Dennis, being first duly sworn, hereby depose and state as follows:

### <u>IDENTITY AND EXPERIENCE OF THE AFFIANT</u>

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure to search the premises known as 1190 E. Connecticut Avenue, Southern Pines, North Carolina, 28387, as more fully described in ATTACHMENT A, and hereinafter referred to as the "Subject Premises." The purpose of the search is to locate and seize the items set forth in ATTACHMENT B, hereinafter referred to as the "Target Evidence."

2.      I have been employed with the North Carolina Department of Insurance (NC DOI) since March 2018. I am currently assigned to the Federal Bureau of Investigation's (FBI) Raleigh Resident Agency of the Charlotte Division as a full-time Task Force Officer. As such, I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C). While employed by NC DOI, I have been trained to work a variety of criminal investigations including, but not limited to, insurance fraud, health care fraud, and other financial crimes. I am currently tasked with investigating federal violations associated with financial crimes fraud as part of the Triangle Fraud Task Force. I have investigated federal criminal violations related to insurance fraud, loan fraud and money laundering. In those investigations, I have

participated in the execution of search warrants of premises and electronic devices, as well as the review of digital evidence on electronic devices.

3. The information contained in this affidavit is known to your Affiant through involvement in the investigation, your Affiant's background, training, and experience, and information provided by other agencies involved in this investigation, including the U.S. Department of Transportation Office of Inspector General (OIG), NC DOI, and the Moore County Sheriff's Office (MCSO). This affidavit contains only those facts which are sufficient and necessary to promote the purpose of the affidavit, described below. This affidavit should not be construed to contain all facts known to your Affiant and the investigating agencies regarding the matter under investigation.

4. This Court has jurisdiction to issue the requested warrant because the Subject Premises is located within the Middle District of North Carolina. See Fed. R. Crim. P. 41(b)(1).

5. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of federal law have been committed by Barrett Baxley, and/or Constance Baxley, and/or Rudolph Baxley, and/or others (the "Target Subjects"), including but not limited to: Title 18, United States Code, Section 1344 (Bank Fraud); Title 18, United States Code, Section 1014 (False Statements on Loan Applications); Title 18, United States Code, Section 1341 (Mail Fraud); Title 18, United States Code, Section 1343 (Wire Fraud), and; Title 18, United States Code, Section 1957 (Conducting Transactions in Criminally Derived Property) (hereinafter collectively referred to as "Subject Offenses"). Based on the facts set forth in this affidavit, the is probable cause to believe that the Subject Premises, and the Target Subjects' person, will contain evidence, fruits, and instrumentalities of the Subject Offenses.

2

## Target Subjects, Businesses and Relevant Properties

6. **Barrett Christian Baxley** ("Barrett" or "Barrett Baxley"), 45, is a North Carolina resident. According to NC DMV records, Barrett resides at 114 Sand Dollar St., Supply, NC.

7. **Constance Autry Baxley** ("Constance" or "Constance Baxley"), 77, is the mother of Barrett. An active North Carolina driver's license issued to Constance lists an address of 114 Sand Dollar St, Supply, NC. However, evidence obtained during this investigation establishes that Constance's primary residence is the Subject Premises, 1190 East Connecticut Ave. Southern Pines, NC. Constance also holds a fraudulently obtained South Carolina driver's license with a fictitious address of 9 E. Battery St., Charleston, NC.

8. **Rudolph Leonard Baxley, Jr.** ("Rudolph" or "Rudolph Baxley"), 78, is the father of Barrett and husband of Constance. An active North Carolina driver's license issued to Rudolph list an address of 114 Sand Dollar St., Supply, NC. However, evidence obtained during this investigation establishes that Rudolph's primary residence is the Subject Premises, 1190 East Connecticut Ave. Southern Pines, NC.

9. **Baxley Construction Co LLC** According to filings with the South Carolina Secretary of State (SCSOS), on 03/31/2022, Rudolph L. Baxley Jr. completed a business registration for Baxley Construction Co LLC, 165 Market St. Charleston, SC. Baxley Construction Co LLC was dissolved on 12/03/2022. This investigation has established that Baxley Construction Co LLC is a shell company created and used by the Target Subjects to commit fraud. Rudolph and Constance Baxley own and operate a different business, Baxley Construction Company Inc., which has been registered in North Carolina since 1979. The most recent annual

3

report filed with the North Carolina Secretary of State (NCSOS) on 06/12/2024 lists Baxley Construction Co., Inc.'s address as 4805 Green Road, Suite 100 Raleigh, NC.

10.     I have reviewed records for bank accounts opened by the Target Subjects for both Baxley Construction Company, Inc. and Baxley Construction Co LLC. Bank records for Baxley Construction Inc. indicate business transactions, including, but not limited to, payroll expenses processed through ADP, a payroll processing company, and large deposits from the North Carolina Department of Transportation related to contracts. However, there does not appear to be any legitimate income deposited into the bank account nor any legitimate business expenses withdrawn from the bank account for Baxley Construction Co LLC.

11.     ***Southern Plantation Properties Holding, LLC*** ("Southern Plantation"). According to filings with the SCSOS, on 08/01/2018, Barrett Baxley submitted a business registration for Southern Plantation with an address of 165 Market St. Charleston, SC. This company shows to be in good standing. This investigation has established that Southern Plantation is a shell company created and used to commit fraud.

12.     ***Grady White Boats, LLC***. According to filings with the SCSOS, on 10/03/2021, Constance Baxley established Grady White Boats, LLC with an address of 9 E. Battery St. Charleston, SC. Your affiant is aware of the business "Grady-White Boats, Inc," a legitimate business and boat manufacturer incorporated in North Carolina and headquartered in Greenville. On 06/04/2024, your affiant conducted a telephone interview with the Direct Human Resources Manager for Grady-White Boats Inc. (hereinafter "B.W."). B.W. reported that Grady-White Boats, Inc. had no affiliation with Grady White Boats, LLC. This investigation has established that the Target Subjects opened  business checking account in the name of Grady White Boats, LLC and used this account to receive and transmit fraud proceeds. Based on my training and

4

experience, I believe that Grady White Boats, LLC is a shell company created by the Target Subjects to facilitate fraud. I believe that the name "Grady White Boats, LLC" was chosen to create the appearance that it was affiliated with the legitimate boat manufacturer.

13. *9 East Battery Street, Charleston, SC* ("Battery Street"). 9 East Battery Street is a private residence located in Charleston, South Carolina. 9 East Battery Street has been used by the Target Subjects to commit fraud. For example, Constance Autry Baxley fraudulently obtained a South Carolina drivers' license which falsely lists 9 E Battery Street as her address. The Target Subjects conducted multiple fraudulent vehicle purchases on behalf of the shell business Baxley Construction wherein Battery Street was listed as the business address.

14. This investigation has established that the Target Subjects have no true affiliation with Battery Street. A deed recorded on 12/14/2018 at the Charleston County SC Register of Deeds office shows Classical American Homes Preservation Trust (C.A.H.P.T.) as the owner of Battery Street. On 02/19/2024, your affiant conducted a telephone interview with Will Hamilton (Hamilton), who serves as the Director of Historic Preservation for C.A.H.P.T. Hamilton confirmed that C.A.H.P.T. owns 9 E. Battery Street, which is known as the Roper House. Hamilton also provided he is responsible for gathering and collecting the mail for the Roper House and that he has seen mail for Constance Baxley, Rudolph Baxley, Baxley Construction LLC, Grady White Boats LLC and Southern Plantation Properties. Hamilton advised that he sent the mail back as "return to sender". Hamilton confirmed that the Target Subjects and the shell businesses have never been located or been associated with the Roper House address. Based on my training and experience, I believe that the Target Subjects used South Carolina addresses, such as Battery Street, to perpetuate the scheme.

5

15. ***165 Market Street, Charleston, SC*** ("Market Street"). Market Street is located in downtown Charleston, SC. The Market Street address has been used by the Target Subjects to commit fraud. For example, when the shell business Southern Plantation Homes was registered with the South Carolina Secretary of State, Market Street was listed as the business address. On multiple occasions, the Targets Subject have used the Market Street address to conduct fraudulent vehicle purchases. The investigation has established that the Target Subjects have no true affiliation with Market Street. A deed recorded on 10/26/1998 at the Charleston County SC Register of Deeds office shows Elderly Housing, Inc. d/b/a as Canterbury House as the owner of 175 Market Street, Charleston, SC. Your affiant conducted a telephone interview on 04/22/2024 with Linda Crocker (Crocker), who serves as the Director of Canterbury House. Canterbury House consists of senior apartments and owns and utilizes two addresses adjacent to each other, 165 and 175 Market St., Charleston, SC. Crocker provided that neither the Target Subjects or the shell businesses have ever lived in or been associated with the Canterbury House addresses. Crocker has seen mail for Constance Baxley, Barrett Baxley, Baxley Construction Company, and Southern Plantation Properties. Crocker sent mailings back as "return to sender". Based on my training and experience, I believe that the Target Subjects used South Carolina addresses, such as Market Street, to conceal the scheme.

## **PROBABLE CAUSE**

16. Unless otherwise noted, the facts set forth in this affidavit are based upon documents obtained during this investigation, reports prepared by law enforcement agencies, publicly available records and information, and witness interviews. The criminal offense conduct under investigation is extensive and spans over a period of years.

17.     An investigation of violations of federal criminal laws by the Target Subjects is being conducted by the Federal Bureau of Investigation, the United States Department of Transportation Office of Inspector General, the North Carolina Department of Insurance and the Moore County Sheriff's Office. To date, the investigation has uncovered evidence that, from at least April 2019 to present, the Target Subjects have executed a complex scheme to defraud various individuals and businesses including automotive dealerships, financial institutions, commercial lending institutions and insurance providers. In broad terms, the scheme has been executed as follows:

18.     Shell businesses have been created and registered with the South Carolina Secretary of State's Office, including, Baxley Construction Co LLC, Southern Plantation, and Grady White Boats LLC. Bank accounts have been opened in the name of the shell businesses and/or the Target Subjects.

19.     The Target Subjects have purchased vehicles from car dealerships located within the Eastern District of North Carolina and other locations throughout the United States. Typically, the Target Subjects have purchased the vehicles by obtaining indirect financing (dealership financing). Dealership financing involves the execution of a Retail Installment Sales Contract between the dealership and car buyer. The dealership then sells the contract to another financial institution, who receives the monthly loan payments from the buyer.

20.     The Target Subjects have provided materially false, misleading and inaccurate information to auto dealers to finance and purchase these vehicles. As a result of this false, misleading and inaccurate information, the Target Subjects have obtained more than $2,800,000.00 in vehicle financing.

21.     The Target Subjects have registered the vehicles in the State of South Carolina using shell companies and fictitious addresses. In some instances, the title and registration applications have failed to disclose the existence of a lienholder, resulting in the issuance of a title that appears to be "free and clear."

22.     The Target Subjects have typically made few payments or no payments at all on the loan balance. As a result, some of the loans have defaulted and creditors have sought to repossess the vehicles which served as collateral for the loan.

23.     The Target Subjects have employed various deceitful tactics to perpetuate the fraud scheme, obstruct creditors and avoid detection by law enforcement, including but not limited to:

    a.   using shell businesses and fictitious addresses;

    b.   using aliases and fictitious identities;

    c.   claiming to be the victim of identity theft and submitting fraudulent identity theft claims containing fraudulent police reports to credit reporting agencies and the Federal Trade Commission ("FTC");

    d.   using multiple phone numbers and email addresses.

24.     In some instances, the Target Subjects have sold the vehicles to innocent third parties while concealing the fact that the vehicles were encumbered by a lien held by a commercial lender.

25.     The Target Subjects have also defrauded insurance companies as part of this scheme. For example, after purchasing vehicles, they have obtained insurance policies through the submission of applications containing materially false and misleading information. In some instances, fraudulent insurance claims have been submitted that resulted in the issuance of insurance payments to the Target Subjects. After some of the vehicles were purchased and insured,

8

"full payments" for the vehicles have been made from accounts containing insufficient funds. These payments have resulted in letters or electronic messages indicating that the balance of the vehicle had been paid. This would be used by the Target Subjects to give the appearance that the vehicle had been paid off and would be owned outright by the Target Subjects. The false assertion of ownership would also be used to obtain insurance payments for claims that should have been paid to the lienholder.

26.     During the period from April 2019 to present, this investigation has identified at least 30 vehicles that were purchased by the Target Subjects by fraudulent means and at least 29 phone numbers and 11 mobile devices that were registered to the Target Subjects or Subject Entities.

### Representative Examples of Vehicle Purchases and Associated Fraud

27.     *2021 Mercedes-Benz.*   On 08/15/2022, a 2021 Mercedes-Benz S580 with the Vehicle Identification Number (VIN) W1K6G7GB1MA028031 was purchased from Jeff Wyler Mercedes-Benz, Louisville, Kentucky.  The retail purchase agreement and retail installment sales contract bear the signature of Rudolph Baxley Jr. as manager/member of Baxley Construction Company LLC.  Mercedes-Benz Financial Services (MBFS) financed the purchase in the amount of $121,273.00.   The credit applications contained the following information:

| Applicant Name | Baxley Construction Company LLC |
|---|---|
| Applicant Address | 9 E Battery St, Charleston, SC  29401-2740 |
| Phone Number(s) | 910-631-3300; 910-842-1140 |
| Email Address | Rudolphbaxley6300@gmail.com |
| Guarantor | Rudolph L Baxley |
| Address | 9 E Battery Street, Charleston, SC  29401 |
| Time at Present Address | 59 yrs, 11 months |
| Salary | $74,152 per month |

9

28.     According to documentation provided by MBFS, on 08/19/2022, an Affidavit of Identity was signed by Rudolph Baxley and notarized. The purpose of the affidavit was to establish and verify the affiant as a customer of Mercedes-Benz of Louisville. The Affidavit listed the affiant as Rudolph Baxley, contained a right thumbprint, indicated a home address of 9 E Battery Street, Charleston, SC, and a signing location of 114 Sand Dollar St, Holden Beach, NC 28462.

29.     On or about 10/05/2022, an insurance claim was filed on five vehicles, including the 2021 Mercedes-Benz, with Berkshire Hathaway Insurance ("Berkshire") against a policy held by Baxley Construction Company, LLC. Documentation provided by Berkshire indicates the claimant was Rudolph Baxley, (910) 631-3300. The reported date of loss was 09/30/2022 at 114 Sand Dollar St. The claim sought $30,000 for repairs to the Mercedes and a total loss designation for the other four vehicles. At the time of the filing, the claimant indicated the vehicles were then-located at the Subject Premises at 1190 East Connecticut St, Southern Pines, NC 28387 for inspection. The claimant requested that payments and correspondence be sent to 114 Sand Dollar St Supply NC 28462.

30.     As part of the claim, a person identifying himself as Rudolph Baxley advised Berkshire that the 2021 Mercedes required $30,000 in brake repairs and that he had secured "Charleston Exotic Imports" to do the repair work. On 10/25/2022, Berkshire received an email from Baxley containing a W-9 tax document for Charleston Exotic Imports. The document was dated 10/24/2022 and listed "BC Baxler" as the Sole Member. Berkshire received an additional email from Mr. Baxley that purported to be a W-9 Request for Taxpayer Identification Number and Certification for "Charleston Exotic Exports." Both documents listed an address of 165 Market St, Charleston, SC.

10

31.    According to the South Carolina Secretary of State, Charleston Exotic Imports LLC with an address of 06 Battery St Charleston, SC was registered on 10/24/2022 by "Connie Autry." Based on my training and experience, I believe that Charleston Exotic Imports LLC is a fictitious company created by one or more of the Target Subjects (Barrett Christian Baxley, Constance Autry Baxley, Rudolph Leonard Baxley, Jr.) to perpetuate the fraud scheme.

32.    Documentation obtained from Berkshire reflects that Rudolph Baxley refused to provide additional requested documents and failed to submit to an Examination Under Oath, as his policy required. Berkshire did not approve the insurance claims and no payment was issued.

33.    On 11/02/2022, Allstate received a telephone call from a subject who identified himself as Rudolph Baxley seeking to file an insurance claim on the same five vehicles that were the subject of the above-referenced Berkshire claim. The caller reported that the damage was due to the vehicle being submerged on 09/30/2022. Your affiant is aware that, on this date, areas in South Carolina experienced storm surge flooding due to Hurricane Ian.

34.    On 11/09/2022, Allstate received an email from rudolphbaxley6300@gmail.com, that read, "Here is the estimate for the air ride in the Maybach S580." Attached to the email was a $31,148.30 damage estimate purportedly prepared by Euro Auto Works LLC, 165 E. Market Street, Charleston, SC, owner Chris Baxter, 910-728-7118. The estimate, dated 10/15/2022, included parts specifically for Mercedes-Benz AMG and Maybach. Allstate records reflect that an adjuster spoke with "Chris Baxter" of Euro Auto Works on 11/08/2022.

35.    According to information provided by Google, an account for the email rudolphbaxley6300@gmail.com was created 03/25/21 in the name of Rudolph Baxley, and with an account recovery email of conniebaxley114@gmail.com.

11

36.     According to the South Carolina Secretary of State, there is no business with the name Euro Auto Works, LLC registered in SC. According to public records, there is no 165 E. Market Street.  Based on my training and experience, I believe that that Target Subjects created the repair estimates substantiate the fraudulent insurance claim and perpetuate the scheme.

37.     Allstate also received a $16,924.72 invoice from "East Coast Recovery & Towing," 122 East Meeting Street, Unit 4, Charleston, SC for towing the Mercedez and four other vehicles associated with the above-referenced insurance claim.

38.     On 12/02/2022 Allstate received an email from "Rodney H. Baxter, Sr" of East Coast Towing Inc.  The email, which was sent from parkerriddle114@gmail.com, included a description of the towing services and provided a federal tax ID number for East Coast Towing.

**From:** parker riddle <parkerriddle114@gmail.com>
**Sent:** Friday, December 2, 2022 1:39 PM
**To:** KIMBROUGH, JONATHAN (PCS) <CTFGD@allstate.com>; Rudolph Baxley <rudolphbaxley6300@gmail.com>
**Subject:** [External] Re: Tow Invoice.

Mr Kimbrough
Sorry for the delay, I'm in the hospital with Pneumonia and I'm doing my best to respond to all phone calls and emails but due to vent down my throat It's hard for me to talk and for people to understand but I will try to explain this through an email form if that's acceptable. I received a call from Rudolph Baxley the day of the storm and asked me to come get total of five vehicles from his property that were submerged by water, both Ford F250 diesel  trucks were push by waves into the marsh grass and we had to use one of our 18 wheeler lift trucks to lift it straight up out of the marsh versus dragging it through the mud and tearing the marsh grass up. Both rams were parts underneath the house I am water was completely to the top of the bed of the truck and the water from the storm

12

went into the fuel tank cap because ram trucks do not have fuel caps on there Fuel doors and it's
submerge the salt water and water was overflowing through the entrance point of the fuel cap and
was leaking into the water. Both ram trucks were pushed against balance and wheels were locked
against the pollens ! I had to remove all wheels and fuel tanks and driveshaft off both ram trucks and
remove the wheels off both Ford F250s with Driveshafts . I loaded all four vehicles on the trucks and
took them from Holden Beach North Carolina to Charleston South Carolina to my lot the total miles
were 159.9 miles From one location to the other location. My federal Tax 56-2389317 . Rudolph
Baxley the owner of Baxley construction company LLC has paid me in full so no money is owed to me
outstanding right now
Thanks
Rodney H Baxter Sr
East Coast Towing INC
122 S Market St
Charleston SC 29401

Sent from my iPhone

39.     According to information provided by Google, the account associated with the
email address parkerriddle114@gmail.com shares a common account recovery phone number with
multiple other Google accounts, including an account belonging to the email address
christianbaxley114@gmail.com.

40.     According to the SCSOS, there is no business with the name East Coast Recovery
& Towing registered in SC. According to public records, there is no 122 East Meeting Street;
however, the business Meyer Vogl Gallery (MVG) is located at 122 Meeting Street. On
06/07/2024, your affiant conducted a telephone interview with an employee of MVG who was not
familiar with East Coast Recovery and Towing and further advised that there is no "East Meeting
Street" in Charleston, SC. According to law enforcement databases, the Tax ID number provided
in the above-referenced email sequentially contains the first 3 and last 4 numbers in Barrett
Christian Baxley's social security number. Based on my training and experience, I believe that that
Target Subjects created the invoice to substantiate the fraudulent Allstate insurance claim.

41.     Documents provided by MBFS reflect that, before filing the Allstate insurance
claim, Rudolph Baxley had failed to make required payments on the Mercedes loan balance.  On

13

10/07/2022, a person who identified himself as Rudolph Baxley called MBFS and claimed that he did not sign the sales contract or personal guaranty in connection with the purchase of the 2021 Mercedes-Benz. The caller claimed to be the victim of identity theft. After concluding that the claim was meritless, on 12/02/2022, MBFS was contacted by a person who self-identified as Rudolph Baxley, a retired federal judge, and claimed that the FBI was now involved. To substantiate the claim, Baxley later provided MBFS an FTC Identity Theft Complaint and police report from the Charleston County Sheriff's Department. MBFS confirmed with the Charleston County Sheriff's Department that the police report was fraudulent. MBFS closed the complaint as without merit.

42.    In accordance with the terms of the retail installment sales contract, MBFS accessed the GPS unit on the 2021 Mercedes-Benz and determined that the vehicle was then-located at a storage facility at 10500 NC Hwy 211, Aberdeen, NC. Investigation by the MCSO determined that one unit at that storage facility was being rented by Rudolph Baxley and multiple units were being rented by Barrett Baxley.

43.    On 01/10/2023, detectives from the MCSO executed a search warrant at the storage facility located at 10500 NC Hwy 211 Aberdeen, NC and located the 2021 Mercedes-Benz in one of the storage units under the control of Barrett Baxley. The vehicle was towed to the MCSO and a subsequent search warrant was issued to search the contents of the vehicle. This search uncovered various FedEx envelopes in the 2021 Mercedes-Benz. One such envelope was addressed to Baxley Construction Co LLC, Rudolph Baxley, 114 Sand Dollar St Supply, NC from Classic Motors 4333 Mall Drive, Texarkana, TX 75501, and shipped on 09/01/2022.

44.    Also in storage units belonging to Barrett Baxley, detectives located several other vehicles that had VIN plates covered and concealed from plain view along with vehicles displaying

14

fictitious registration plates. Detectives had the 2021 Mercedes-Benz along with five additional vehicles towed to the MCSO for further investigation. It was determined that the five additional vehicles were being sought for repossession by finance companies that issued loans. This investigation has shown loan applications for these vehicles contained false information. The finance companies ultimately provided the MCSO with repossession orders for each respective vehicle and took possession from the MCSO. These vehicles include FORD 250 #1 and Ford F250 #2 which are described below.

45.     On or about 02/23/2023, an attorney representing Rudolph and Constance Baxley sent a $126,923.00 wire transfer to MBFS to pay the full outstanding balance owed on the 2021 Mercedes. As a result, the 2021 Mercedes was returned to Rudolph Baxley.

46.     On 02/22/2024, Rudolph Baxley Jr., appeared in person at Mercedes-Benz of Fayetteville to seeking to sell the 2021 Mercedes-Benz. Rudolph L. Baxley, Jr. signed a Bill of Sale, Odometer Disclosure Statement, and Damage Disclosure Statement identifying the seller's address as the Subject Premises, 1190 E Connecticut, Southern Pines, NC. Baxley also presented a North Carolina driver license with an address of 114 Sand Dollar St, Holden Beach, NC. Among other things, the Damage Disclosure Statement represented the 2021 Mercedes-Benz was not damaged by collision or other occurrence to the extent that damages exceed 25% of its value at the time of the collision or other occurrence and that the Mercedes-Benz is not a flood vehicle.

47.     On 05/29/24, Special Agent K. Wiesel, U.S. Department of Transportation Office of Inspector General, interviewed employees of Mercedes-Benz of Fayetteville. The employees indicated when they saw the 2021 Mercedes-Benz in June of 2023, based on its condition, the vehicle did not appear to have been flooded. Mercedes-Benz of Fayetteville identified the 2021 Mercedes-Benz as an S580, not a Maybach. They further indicated a Mercedes-Benz S580 with

AMG or Maybach replacement parts would be overkill and would have been noticed. The 2021 Mercedes-Benz contained stock calibers and tips.

48. ***GMC Sierra #1 and #2.*** On or about 09/02/2022, Baxley Construction Company LLC purchased two vehicles from Classic Motors of Texarkana, Inc., Texarkana, Texas; a 2022 GMC Sierra 2500 with VIN 1GT49REY9NF355022 (GMC Sierra #1) and 2022 GMC Sierra 2500 with VIN 1GT39MEY3NF295429 (GMC Sierra #2). All purchase and financing documents requiring a signature reflect that they were signed by Rudolph Baxley Jr. GM Financial financed the purchases in the amounts of $92,512.91 and $69,700.59. The credit applications contained the following information:

| Applicant Name | Baxley Construction Company LLC |
|---|---|
| Applicant Address | 9 E Battery St, Charleston, SC  29401-2740 |
| Phone Number(s) | 910-631-3300 |
| Email Address | Rudolphbaxley6300@gmail.com |
| Time at Present Address | 48 years |
| Guarantor | Rudolph Baxley |
| Address | 9 E Battery St, Charleston, SC  29401-2740 |
| Time at Present Address | 50 years |
| Gross Income | $850,000 yearly |

49. In or about September 2022, Classic Motors sent Rudolph Baxley, Jr. via FedEx to 114 Sand Dollar Street, Supply, NC, vehicle purchase, financing, and title paperwork for both vehicles. Rudolph Baxley, Jr. signed and returned the paperwork to Classic Motors. Classic Motors sent Rudolph Baxley, Jr. a copy of the signed, completed paperwork including a SCDMV Title Application and the Certificate of Origin for the GMC Sierra #1 and the GMC Sierra #2. While the SC DMV Title Applications, dated 09/02/2022, both accurately reflected GM Financial as the Lienholder, Classic Motors failed to accurately complete the Lienholder information on the Certificate of Origin.

16

50.     According to records obtained from SCDMV, on 11/02/2022, Constance Baxley appeared in person at the SCDMV located Bennettsville, SC to pick up the titles for the GMC Sierra #1 and GMC Sierra #2. As identification, Constance Baxley provided a South Carolina Driver's License with an address of 9 E Battery St, Charleston, SC. Constance Baxley signed the SCDMV Third Party Title Pick Up as the individual receiving the titles on 11/02/2022. The vehicle owner was listed as Baxley Construction and the relationship to vehicle owner was listed as "mother". The accompanying SCDMV Title Applications for the GMC Sierra #1 and GMC Sierra #2 were not the same applications completed by Classic Motors and failed to list the Lienholder. The title applications submitted to the SCDMV listed 9 E Battery Street, Charleston, SC as the primary owner's residence and PO Box 2087, Southern Pines, NC as the mailing address. United States Postal Service records reflect that Connie Baxley is the registered box holder of PO Box 2087, Southern Pines, NC.

51.     This investigation established that the South Carolina Driver's License presented on 11/02/2022 had been fraudulently obtained by Constance Baxley on 08/31/2021 at a SCDMV location in Bennettsville, SC. According to SCDMV records, on that date, Constance Baxley claimed to be a resident of South Carolina and as proof of residency provided an AT&T bill for an account with address of 9 E Battery Street, Charleston, SC, which has been used by the Target Subjects to further the scheme to defraud. Also provided was a counterfeit Service Start Up document from the utility company Santee Cooper for a service address of 9 E Battery Street, Charleston, SC. The Service Start Up document provided a mailing address of 1190 E Connecticut Ave, Southern Pines, NC (the Subject Premises), and an Account ID number of 5822238586. Records obtained from Santee Cooper indicate that Account ID number 5822238586 is not for a service address of 9 E Battery Street, Charleston, SC, but for 513 Huntington Lake Circle, Pawleys

17

Island, SC, an address Constance Baxley was associated with in 2017. Santee Cooper confirmed that they do not serve 9 E Battery Street, Charleston, SC. In order to receive the SC Driver's License, Constance Baxley was required to surrender her NC Driver's License. Constance Autry Baxley was then issued a South Carolina license bearing the license number 106214561. According to NCDMV records, the NC Driver's License surrendered by Constance Baxley was a duplicate that she had obtained pursuant to an online request on or about 07/23/21. The listed reason for the duplicate request was lost/stolen. The phone number listed with this request was (919) 906-2462.

52.     On 11/04/2022, a resident of Rockingham, NC, hereinafter referred to as "J.B.", purchased GMC Sierra #1 from Constance Baxley. On this date, J.B. met with Constance Baxley at Truist Bank in Southern Pines, NC, where he provided her a cashier's check in the amount of $84,000 written to Baxley Construction CO LLC. On 11/04/2022, the check was deposited into a First National Bank account belonging to Baxley Construction Co LLC, 1190 E Connecticut Avenue, Southern Pines, NC 28387. J.B. was not aware that the vehicle was subject to a lien held by GM Financial. On 02/22/2023, GM Financial repossessed GMC Sierra #1 after Baxley Construction defaulted on the loan by failing to make payments. On the same day, J.B. filed a report with the Richmond County Sheriff's Office, who made several unsuccessful attempts to contact Constance Baxley. On the same date, a detective received a call from a male subject claiming to be "Rodney Cole," who claimed to be Constance Baxley's CPA. J.B. also received a call from "Rodney Cole" and recognized the voice as that of Barrett Baxley. The call came from 910-728-7118, the same number represented as belonging to Chris Baxter of Euro Auto Works LLC [see paragraph 35].

18

53.     In November 2022, the Target Subjects sold GMC Sierra #2 to an innocent third party (hereinafter referred to as "N.M."). Your affiant has reviewed reports of interviews of N.M. and documentation and communications related to the sale. N.M located GMC Sierra #2 listed for sale on a Facebook Marketplace account in the name of "Mandy Parker." On 11/13/2022, N.M. contacted the purported seller Mandy Parker via Facebook Messenger and expressed interest in purchasing the truck. Parker provided N.M. with the phone number for her husband "Rudy," 910-631-3300. On 11/16/2022, via text, "Rudy" sent N.M. a picture of a SC Certificate of Title for GMC Sierra #2 representing the owner of the vehicle was Baxley Construction Co LLC 9 E Battery Street, Charleston, SC. "Rudy" further indicated the truck was located at 1190 E Connecticut Ave Southern Pines NC 28387 (the Subject Premises) and that his wife and son would be there most of the day. On 11/20/2022, N.M. and his father traveled to the Subject Premises to purchase the GMC Sierra #2. Upon arrival, they met with Barrett Baxley and Constance Baxley to complete the sales paperwork, exchange funds, and pick up the GMC Sierra #2. The purchaser witnessed Constance Baxley sign the title for the GMC Sierra #2. When Constance Baxley was signing the title, she asked Barrett Baxley which address to use, Charleston or Southern Pines and Barrett Baxley said Charleston. The purchaser handed Constance Baxley a $58,000 cashier's check payable to Baxley Construction Co LLC. On 11/21/2022, the check was deposited into a First National Bank account belonging to Baxley Construction Co LLC, 1190 E Connecticut Avenue, Southern Pines, NC 28387. N.M. was not aware that the vehicle was subject to a lien held by GM Financial.

54.     ***FORD F250 #1 and Ford F250 #2.***  On 07/28/2022, Baxley Construction Co LLC purchased two vehicles from Koons Ford of Silver Spring MD; a 2022 Ford F250 with VIN 1FT7W2BT4NEE55914 (Ford F250 #1) and a 2022 Ford F250 with VIN 1FT7W2BT6NEE55915 (Ford F250 #2). Financing documents requiring a signature reflect that they were signed

19

electronically by Rudolph Baxley for Baxley Construction Co LLC. Ford Motor Credit Company (FMCC) financed the purchase in the amounts of $96,066.26 and $99,866.18. The credit applications contained the following information:

| | |
|---|---|
| Business Name | Baxley Construction Co LLC |
| Business Address | 9 E Battery Street, Charleston, SC 29401-2740 |
| Phone Number(s) | 910-631-3300; 843-642-0018;843-692-6225 |
| Email Address | Rudolphbaxley6300@gmail.com |
| Time at Present Address | 52 years 9 months |
| Guarantor | Rudolph Leonard Baxley |
| Address | 9 E Battery Street, Charleston, SC 29401-2740 |
| Time at Present Address | 52 years 9 months |
| Gross Income | $75,000.00 Monthly |

55.     The Business Credit Application listed the purchaser as Baxley Construction Company LLC, 9 E. Battery Street Charleston, SC 29401. The application lists a home phone number of 910-631-3300, cellular number as 843-642-0018 and employer phone number as 843-692-6225. AT&T records indicate the user of (910) 631-3300 is Constance Baxley, 9 E Battery St. Charleston, SC with a Billing Party of Constance Baxley, 114 Sand Dollar St, Supply, NC. AT&T records further indicate the user of (843) 692-6225 is Constance Baxley, 1190 E Connecticut Ave, Southern Pines, NC with a Billing Party of Constance Baxley, 114 Sand Dollar St, Supply, NC.

56.     On or about 10/05/2022, a claim was filed on the Ford F250 #1 and Ford F250 #2, among other vehicles, with Berkshire Hathaway Insurance against a policy held by Baxley Construction Company, LLC.  Berkshire Hathaway Insurance documentation indicates the claimant on behalf of Baxley Construction Company LLC was Rudolph Baxley, with a phone number of (910) 631-3300. The reported date of loss was 09/30/2022 at 114 Sand Dollar St.  At the time of the claim, the claimant indicated the vehicles were located at 1190 East Connecticut

St, Southern Pines, NC 28387. The named insured further advised to send payments and correspondences to 114 Sand Dollar St Supply NC 28462.

57.    Documentation obtained from Berkshire reflects that Rudolph Baxley refused to provide additional requested documents and failed to submit to an Examination Under Oath, as his policy required. Berkshire did not approve the insurance claims and no payment was issued.

58.    On 11/02/2022 a claim was filed with Allstate Insurance on a policy held by Baxley Construction CO LLC for the Ford F250 #1 and Ford F250 #2, among other vehicles.- The Allstate file lists the insured's address and inspection location as 1190 East Connecticut Ave, Southern Pines, NC 28387, with a phone number of (843) 642-0018. An additional phone number of (910) 631-3300 was also provided. The date of loss was presented as 09/30/2022 and was due to flooding from Hurricane Ian. Photographs contained in the Ford F250 #2 Allstate file show the vehicle bearing a SC license plate VDL160. SC license plate VDL160 is associated with a 2019 Mercedes-Benz registered to Constance Autry Baxley, 9 E Battery St., Charleston, SC 29401.

59.    On 11/14/2022, FMCC received payments on the Baxley Construction CO LLC accounts in the amount of $98,680.04 and $99,999 for payoff on the Ford F250 #1 and Ford F250 #2. Both payments were returned on the same date. On 11/18/2022, Allstate contacted FMCC and confirmed Ford F250 #1 and F250 #2 were paid off. The Allstate files contain letters dated 11/14/2022 from FMCC indicating that the accounts for the Ford F250 #1 and Ford F250 #2, had been paid in full and that the lien has been released.

60.    As a result of the false assertion that the vehicles had been paid in full, between 11/15/2022 and 11/18/2022, two payments totaling $96,529.10 were issued to Baxley Construction Co LLC from Allstate for the Ford F250 #1. During the same time period, three additional

21

payments totaling $96,040.30 were issued to Baxley Construction Co LLC from Allstate for the Ford F250 #2.

61. Ford F250 #1 and Ford F250 #2 were towed to the MCSO after the execution of the search warrant at the storage facility located at 10500 NC Hwy 211 Aberdeen, NC on 01/10/2023. On 01/10/2023, the Ford F250 #1 bore SC license plate P829447. SC license plate P829447 is associated with a 2021 GMC 3500 registered to Southern Plantation Properties Holding, LLC 165 Market St, Charleston, SC 29401. The Ford F250 #2 bore SC license plate VDL160. SC license plate VDL160 is associated with a 2019 Mercedes-Benz registered to Constance Autry Baxley, 9 E Battery St., Charleston, SC 29401. Ford F250 #1 and Ford F250 #2 were repossessed FMCC from the MCSO on 06/14/2023.

62. *2023 Ram 2500.* On 11/16/2023, Constance Autry Baxley purchased a 2023 Ram 2500 with the VIN 3C6UR5GL6PG503498 from Asheboro Dodge Chrysler Jeep and Ram in Asheboro, NC. TowneBank financed the purchase in the amount of $83,280.85. The credit application contained the following information:

| Applicant Name | Constance A. Baxley |
| --- | --- |
| Home Address | 9 E Battery Street, Charleston, SC 29401 |
| Phone Number(s) | 910-689-5910 (home and cell); 843-810-7002 (work) |
| Email Address | cbaxleysouthernhomes@yahoo.com |
| Time at Present Address | 5 Years |
| Employer | Southern Plantation Properties (President) |
| Salary | $74,000.00 Monthly |
| Time at Present Job | 8 Years |

63. A copy of Constance Baxley's SC driver's license number 106214561 showing the address of 9 E Battery St. Charleston, SC 29401 is included.

64. *FORD Bronco Raptor #1.* On December 7, 2023, Constance Autry Baxley purchased a 2022 Ford Bronco Raptor with the VIN 1FMEE5JR9NLA52083 from Cavalier Ford

22

Lincoln in Chesapeake, VA. TowneBank financed the purchase in the amount of $94,292.92. The credit application contained the following information:

| Applicant Name | Constance A. Baxley |
| Home Address | 9 E Battery Street, Charleston, SC 29401 |
| Phone Number(s) | 843-810-7002;910-689-5910 |
| Email Address | Conniebaxley114@gmail.com |
| Time at Present Address | 30 Years 9 months |
| Employer | Southern Plantation Properties |
| Gross Income | $889,000.00 Yearly |
| Time at Present Job | 53 Years 6 months |

65.    The application contained a home phone number of (843) 810-7082, cellular phone number of (910) 689-5910, and employer number (843) 810-7002. The application listed two references; Rudolph Baxley, 9 E Battery, Charleston, SC, (843) 810-7002 and Mike Spears, 114 Sand Dollar St, Supply, NC, (843) 810-2309. Cavalier Ford corresponded with Rudolph "Rudy" Baxley via phone and text at (843) 801-7003, Constance "Connie" Baxley at (910) 689-5910, and Wesley Baxley at (843) 810-2309.

66.    The transaction was conducted via telephone, text message, and video call. A third party was used to deliver the traded 2023 Ram 2500 and pickup the Ford Bronco Raptor #1. Cavalier Ford negotiated the purchase of the vehicle with whom they believed to be Rudy Baxley, Constance Baxley's husband. On 12/07/2023 Rudy Baxley sent via text a picture of Constance Autry Baxley's SC Driver's License bearing an address of 9 E Battery St, Charleston, SC. The SC DMV paperwork required a wet signature. At the direction of Rudy Baxley, Cavalier Ford sent the paperwork to 1190 E Connecticut Ave., Southern Pines, NC (the Subject Premises) for signature. Constance Autry Baxley signed a SC DMV Registration Application dated 12/7/2023 for the Ford Bronco Raptor #1 listing her primary residence as 9 E Battery St, Charleston, SC. At

23

the time of purchase, the Ford Bronco Raptor #1 received a temporary registration valid for 30 days.

67. On 12/6/2023, Rudy Baxley texted Cavalier Ford pictures of the 2023 Ram 2500 he intended to trade for the Ford Bronco Raptor #1. Your affiant can identity the pictures of the 2023 Ram 2500 were taken at 1190 E Connecticut Ave, Southern Pines, NC. On 12/11/2023, via text message Rudy Baxley provided a photo of a residence known your affiant to be 114 Sand Dollar Street, Supply, NC. Rudy Baxley also texted a photo of an individual he identified as his son Wesley Baxley, but who is known to your affiant as Barrett Baxley. On 12/14/2023, Rudy Baxley texted a picture of the Ford Bronco Raptor #1 at "the farm", which the affiant can identify as 1190 E Connecticut Ave., Southern Pines, NC (the Subject Premises).

68. During the purchase process, Cavalier Ford had a FaceTime conversation with Constance Baxley. Constance Baxley showed her driver's license during the FaceTime.

69. Constance Baxley was unable to register Ford Bronco Raptor #1 in SC due to the fact that her SC Driver's License was suspended on 06/12/2023 for failure to pay property tax. On 12/30/2023, Rudy Baxley requested by text message that a new temporary tag for the Ford Bronco Raptor #1 be sent to "Connie" at 1190 E Connecticut Ave, Southern Pines, NC. According to Cavalier Ford, the temporary tag had been extended three times and could no longer be extended. Constance Baxley requested the Ford Bronco Raptor #1 be registered in North Carolina. Constance Baxley further advised her son Barrett Baxley lived in North Carolina and provided an address of 114 Sand Dollar Street, Supply, NC.

70. On 03/26/2024, the Ford Bronco Raptor #1 was registered in North Carolina by Constance Autry Baxley, 114 Sand Dollar St, Supply, NC 28462. A North Carolina Driver's

24

License for Constance Autry Baxley, 114 Sand Dollar St, Supply, NC 28462 was provided as proof of North Carolina residency.

71. **FORD Bronco Raptor #2.** On January 31, 2024, Southern Plantation purchased a 2023 Ford Bronco Raptor with the VIN 1FMEE5JR3PLC04099 from Doug Henry Ford of Ayden, Ayden, NC. According to documentation provided by Doug Henry Ford of Ayden, FMCC financed the purchase in the amount of $104,208.05. The business credit application contained the following information:

| Business Name | Southern Plantations Properties Holdings, LLC |
|---|---|
| Business Address | 165 Market St. Charleston, SC 29401 |
| Phone Number(s) | 843-810-7002 |
| Email Address | cbaxleysouthernhomes@yahoo.com |
| Time at Present Address | 74 Years 2 months |
| Guarantor | Constance Autry Baxley |
| Address | 9 East Battery Street, Charleston, SC 29401 |
| Time at Present Address | 45 years |
| Gross Income- | $2,900,000.00 Yearly |

72. The application contained a business phone number of (910) 689-5910, and principal and home number of (910) 624-5170. The application also provided a Tax ID number of 56-2386318 for Southern Plantations Properties Holdings, LLC.

73. An IRS Assignment of an Employer Identification Number letter dated 01/03/2024 contained in the Doug Henry Ford of Ayden file indicated the Employer Identification Number for Southern Plantation Properties Holding, LLC as 99-0490767. It also listed Constance Autry Baxley as a member and PO Box 2087, Southern Pines, NC.

74. On 02/21/2024, the Ford Bronco Raptor #2 was registered with the SC DMV, indicating the primary owner's address of 9 E Battery St, Charleston, SC 29401 with an address of 165 Market St. Charleston, SC as the address at which the vehicle will be housed. The

25

lienholder was accurately reflected as FMCC. Records from Doug Henry Ford reflect that on 03/25/2024 the tag and registration card for the Ford Bronco Raptor #2 were sent via UPS to Constance Baxley, Southern Plantation Properties, 1190 East Connecticut Ave., Southern Pines, NC 28387.

75. On 05/28/2024, Constance A. Baxley as a representative of Southern Plantation Properties Holding, LLC registered the Ford Bronco Raptor #2 with the NC DMV. The residence address was listed as 114 Sand Dollar St, Supply, NC 28462. The date of purchase and lien date were 05/28/2024, and lienholder as Truist Bank.

76. As previously discussed, however, documentation provided by Doug Henry Ford of Ayden reflected that FMCC was the lienholder, not Truist. As a result, your affiant contacted Truist Bank regarding the purported lien. On 07/29/2024, a Truist representative advised that Truist had no record of a loan or account on Ford Bronco #2.

77. *Additional Vehicles Purchased Through Fraudulent Means*. This investigation has identified additional vehicles, including but not limited to the following, that, between 6/28/2019 and 04/26/2022 were purchased through fraudulent means and manners:

- a. White 2022 RAM VIN 3C6UR5FL2NG228436
- b. White 2019 Mercedes Benz S560 VIN WDDUG8DB9KA461949
- c. White 2022 Ford F250 VIN 1FT8W2BT4NEC41719
- d. Gray 2012 Bentley Continental VIN SCBFR7ZA2CC072201
- e. White 2020 GMC Denali Sierra 2500 VIN 1GT49REY4LF103997
- f. White 2019 Chevrolet Grand Sport Corvette VIN 1G1YZ3D7XK5108691
- g. White 2020 GMC Sierra 2500 VIN 1GT49REY4LF140628
- h. White 2018 Mercedes Benz S560 VIN WDDUG8DB8JA392007

78. False address information, income, and/or employment information was provided in order to obtain financing from various lenders for these vehicles. Some of these vehicles were also involved in false insurance claims and/or were charged off by the lender. Department of

26

Motor Vehicle records indicate these vehicles may still be in the possession of the targets. Your affiant believes these vehicles may be located at 1190 E Connecticut Avenue, Southern Pines, NC or 114 Sand Dollar Street, Supply, NC. None of these vehicles are currently registered in the states of North Carolina or South Carolina.

79. ***Transactions in Criminally Derived Property***. Your affiant has reviewed records for various bank accounts opened and controlled by the Target Subjects and determined that bank accounts have been used to receive criminally derived proceeds since at least 2015. More than $482,000 in illicit proceeds were deposited bank accounts in the period between November and December 2022 alone.

80. For the period between November and December of 2022, proceeds of fraudulent insurance claims in excess of $232,000 were deposited into Baxley Construction Co, LLC's First National Bank of Pennsylvania (FNBPA) account ending in 9593. Additionally, your affiant is aware that at least $142,000 in proceeds, related to sale of two fraudulently obtained vehicles that were encumbered by liens and then sold with fraudulently obtained unencumbered titles to innocent victims, were deposited into this same account. Barrett Baxley, Constance Baxley and Rudolph Baxley are all signatories on this account. 1190 E Connecticut Ave. Southern Pines, NC (the Subject Premises) is the address listed for the account. There does not appear to be any legitimate income deposited into this account.

81. From a review of bank records for Grady White Boats, LLC, your affiant is aware that, for the period between November and December of 2022, insurance proceeds based on fraudulent insurance claims in excess of $22,000 were deposited into Grady White Boats, LLC's FNBPA account ending in 9209. Barrett Baxley and Constance Baxley are both signatories on this account. An address of 1190 E Connecticut Ave. Southern Pines, NC (the Subject Premises)

27

is listed for the account. There does not appear to be any legitimate income deposited into this account.

82. From a review of bank records for Southern Plantation, your affiant is aware that, for the period between November and December of 2022, insurance proceeds based on fraudulent insurance claims in excess of $85,000 were deposited into Southern Plantation FNBPA account ending in 9480. Barrett Baxley and Constance Baxley are both signatories on this account. 1190 E Connecticut Ave. Southern Pines, NC (the Subject Premises) is the address listed for the account. There does not appear to be any legitimate income deposited into this account (NOTE: there was a $225,000 wired into this account from Pinnacle for a LOC).

83. Financial analysis by your affiant and other investigators established that criminally derived proceeds were used to engage in numerous monetary transactions and in amounts exceeding $10,000.

84. By way of example, on or about 11/04/2022, an $84,000 check was deposited into Baxley Construction Co LLC's FNBPA account ending in 9593 from Let's Enterprise for the "sale" of a fraudulently obtained vehicle. This vehicle did not have clear title; however, it was sold with a fraudulently obtained clean title. This deposit was the first transaction in this account. On 11/09/2022, $70,000 in cash was withdrawn from this account. Records reflect that Barrett Baxley signed the withdrawal ticket.

85. Between 11/08/2022 and 11/12/2022, three direct deposits from an insurance company, totaling more than $52,000, obtained through fraudulent insurance claims, were deposited into Southern Plantation FNBPA account ending in 9480. The previous day's balance was $76.41. On 11/13/2022, $51,000 was transferred to Grady White Boats, LLC's FNBPA account ending in 9209.

28

86.     On 11/15/2022, two direct deposits from an insurance company, totaling $23,001.72, obtained through fraudulent insurance claims, were deposited into Southern Plantation FNBPA account ending in 9480. The previous day's balance was $226.00. On this same day, $23,000 was transferred to Grady White Boats, LLC's FNBPA account ending in 9209.

87.     Between 11/25/2022 and 11/30/2022, four insurance checks totaling more than $231,000 and obtained through fraudulent insurance claims were deposited into Baxley Construction Co LLC's FNBPA account ending in 9593. On 11/30/2022, $200,000 in cash was withdrawn from this account. Records reflect that Constance Baxley signed the withdrawal ticket.

88.     On 12/01/2022, $82,000 was transferred from Baxley Construction Co LLC's account ending in 9593 to Grady White Boats, LLC's FNBPA account ending in 9209.

### Computers, Cellular Telephones, Electronic Storage and Forensic Analysis

89.     Based on the foregoing, as well as my training, experience, and knowledge of this investigation, I believe that electronic devices, including computers and cellular telephones, were used to commit the Target Offenses and that such electronic devices will be found at the Subject Premises and/or on the person of the Target Subjects.

90.     As described above and in Attachment B, this application seeks permission to search for records that might be found on the Subject Premises, and on the Target Subjects' person, in whatever form they are found.

91.     Your affiant knows from prior investigations and experience that computer hardware, software and electronic files may be important to a criminal investigation in two distinct ways: (1) the objects themselves may be contraband, evidence, instrumentalities, or fruits of crime, and/or (2) the objects may be used as storage devices that contain contraband, evidence, instrumentalities, or fruits of crime in the form of electronic data. Rule 41 of the Federal Rules of

Criminal Procedure permits the government to search for and seize computer hardware, software, and electronic files that are evidence of crime, contraband, instrumentalities of crime, and/or fruits of crime. Affiant requests permission to search and seize business records, including those that may be stored on the computer. These business records constitute both evidence of crime and contraband. Affiant also requests permission to seize the computer hardware that may contain business records if it becomes necessary for reasons of practicality to remove the hardware and conduct a search off-site. Affiant believes that the computer hardware is a container of evidence, a container for contraband, and also itself an instrumentality of the crime under investigation.

92. Based on my training and experience, I know that, in addition to physical files, financial records and correspondence are often stored electronically on computers and other electronic devices.

93. I also know from my training and experience that individuals' use their cell phones for business purposes and thus cell phones often contain business communications and documents in various forms, including but not limited to, text messages and emails. This investigation has shown that Barrett Baxley, Constance Baxley and Rudolph Baxley used multiple cell phones as part of the vehicle purchase process, to communicate with insurance companies and to sell vehicles. I know from my training and experience that individuals often carry cellular devices on their persons. I also know from my training and experience that individuals involved in various criminal activities and schemes will utilize multiple phones and mobile devices to conduct fraudulent and illegal activity and to avoid detection. Therefore, it is reasonable to seize any and all mobile devices located at the Subject premises.

94. I submit that if a computer or storage medium, such as hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic, solid state, or optical media is found at the

Subject Premises, there is probable cause to believe those records would be stored on that computer or storage medium, for at least the following reasons:

a.  Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the internet. Electronic files downloaded to a storage medium can be stored for years for little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file do not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space – that is, in space on the storage medium that is not currently being used by an active file – for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c.  Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for this task. However, it is technically possible to delete this information.

31

d. Similarly, files that have been viewed via the internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

e. Based on actual inspection of other evidence related to this investigation, such as records obtained through searches of various email and cloud-based electronic health record accounts, I am aware that computer equipment was used to generate and store documents used in OTC's fraud scheme.

95. **Forensic Analysis.** As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that forensic electronic evidence will be on any storage medium in the Subject Premises or on the Subject Persons because:

f. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record

32

information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

g.  As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating, or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some

33

information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contain information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it form law enforcement).

h. A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

i. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely

34

reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

j.  Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

96.  Necessity of seizing or copying entire computers or storage media. In most cases, a thorough search of a premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of the storage media. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either form accidental or intentional destruction. This is true because of the following:

k.  *The time required for an examination.* As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be

35

unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence. Storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of the data stored, and would be impractical and invasive to attempt on-site.

l. *Technical requirements*. Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Subject Premises. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

m. *Variety of forms of electronic media*. Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

97. **Nature of examination**. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant your affiant is applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted

scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

98.     Any storage media that is determined to have been used to commit the Target Offenses is an instrumentality of the crimes and thus will be seized and retained pursuant to the warrant. Further, any storage media that contains contraband will be seized and retained pursuant to the warrant.

99.     The warrant I am applying for would permit law enforcement to obtain from certain individuals the display of physical biometric characteristics (such as fingerprint, thumbprint, or facial characteristics) in order to unlock devices subject to search and seizure pursuant to this warrant. I seek this authority based on the following:

100.     I know from my training and experience, as well as from information found in publicly available materials published by device manufacturers, that many electronic devices, particularly newer mobile devices and laptops, offer their users the ability to unlock the device through biometric features in lieu of a numeric or alphanumeric passcode or password. These biometric features include fingerprint scanners and facial recognition features. Some devices offer a combination of these biometric features, and the user of such devices can select which features they would like to utilize.

101.     If a device is equipped with a fingerprint scanner, a user may enable the ability to unlock the device through his or her fingerprints. For example, Apple offers a feature called "Touch ID," which allows a user to register up to five fingerprints that can unlock a device. Once a fingerprint is registered, a user can unlock the device by pressing the relevant finger to the device's Touch ID sensor, which is found in the round button (often referred to as the "home"

button) located at the bottom center of the front of the device. The fingerprint sensors found on devices produced by other manufacturers have different names but operate similarly to Touch ID.

102.   If a device is equipped with a facial recognition feature, a user may enable the ability to unlock the device through his or her face. For example, Apple offers a facial recognition feature called "Face ID." During the Face ID registration process, the user holds the device in front of his or her face. The device's camera then analyzes and records data based on the user's facial characteristics. The device can then be unlocked if the camera detects a face with characteristics that match those of the registered face. Facial recognition features found on devices produced by other manufacturers have different names but operate similarly to Face ID.

103.   In my training and experience, users of electronic devices often enable the aforementioned biometric features because they are considered to be a more convenient way to unlock a device than by entering a numeric or alphanumeric passcode or password. Moreover, in some instances, biometric features are considered to be a more secure way to protect a device's contents. This is particularly true when the users of a device are engaged in criminal activities and thus have a heightened concern about securing the contents of a device.

104.   As discussed in this affidavit, based on my training and experience I believe that one or more digital devices will be found during the search. The passcode or password that would unlock the device(s) subject to search under this warrant is not known to law enforcement. Thus, law enforcement personnel may not otherwise be able to access the data contained within the device(s), making the use of biometric features necessary to the execution of the search authorized by this warrant.

105.   I also know from my training and experience, as well as from information found in publicly available materials including those published by device manufacturers, that biometric

38

features will not unlock a device in some circumstances even if such features are enabled. This can occur when a device has been restarted, inactive, or has not been unlocked for a certain period of time. For example, Apple devices cannot be unlocked using Touch ID when (1) more than 48 hours has elapsed since the device was last unlocked or (2) when the device has not been unlocked using a fingerprint for 4 hours and the passcode or password has not been entered in the last 156 hours. Biometric features from other brands carry similar restrictions. Thus, in the event law enforcement personnel encounter a locked device equipped with biometric features, the opportunity to unlock the device through a biometric feature may exist for only a short time.

106.     In my training and experience, the person who is in possession of a device or has the device among his or her belongings at the time the device is found is likely a user of the device. However, in my training and experience, that person may not be the only user of the device whose physical characteristics are among those that will unlock the device via biometric features, and it is also possible that the person in whose possession the device is found is not actually a user of that device at all. Furthermore, in my training and experience, I know that in some cases it may not be possible to know with certainty who is the user of a given device, such as if the device is found in a common area of a premises without any identifying information on the exterior of the device. Thus, it will likely be necessary for law enforcement to have the ability to require any individual, who is found at the Subject Premises and reasonably believed by law enforcement to be a user of the device, to unlock the device using biometric features in the same manner as discussed above.

107.     Due to the foregoing, if law enforcement personnel encounter a device that is subject to search and seizure pursuant to this warrant and may be unlocked using one of the aforementioned biometric features, the warrant I am applying for would permit law enforcement

personnel to (1) press or swipe the fingers (including thumbs) of any individual, who is found at the subject premises and reasonably believed by law enforcement to be a user of the device, to the fingerprint scanner of the device; (2) hold the device in front of the face of those same individuals and activate the facial recognition feature, for the purpose of attempting to unlock the device in order to search its contents as authorized by this warrant.

108. Your affiant will retain all records seized in a secure location, protect patient confidentiality, and limit access to such records to only persons actively involved with the investigation. Such records will be used only for official purposes.

[intentionally left blank]

## CONCLUSION

109.    Based on the foregoing, there is probable cause to believe that the Target Subjects have committed some or all of the Target Offenses, and that evidence, fruits and instrumentalities of such offenses may be located at the Subject Premises.

## REQUEST FOR SEALING

110.    I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court.  These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation.  Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

Respectfully submitted,

*/s/ George Dennis*
George Dennis
Task Force Officer
Federal Bureau of Investigation

Pursuant to Rule 4.1 of the Federal Rules of Criminal Procedure, the Affiant appeared before me via reliable electronic means, was placed under oath, and attested to the contents of this written Affidavit.

Dated: August 22, 2024  8:31 a.m.

Joe L. Webster
United States Magistrate Judge

41

**ATTACHMENT A**

**Location to be Searched:**

**1190 E Connecticut Ave., Southern Pines, North Carolina 28387**

The SUBJECT PREMISES is described as a single-family dwelling in a residential area. The residence has brick exterior. The residence is a single story with white window shutters, a driveway, and a white two car garage door at the side of the house. The street number, 1190, is affixed to a brick pillar and to the mailbox, which are located on the at the end of the driveway along E Connecticut Avenue.



The search also includes the person of Barrett C. BAXLEY, Constance A. BAXLEY, and Rudolph L. BAXLEY, Jr., if present at the SUBJECT PREMISES. Barrett BAXLEY is a white male, approximately 5'9" tall, with brown hair. He is 45 years old, with a date of birth of February 2, 1979. Constance BAXLEY is a white female, approximately 5'0" tall, with brown hair. She is 77 years old, with a date of birth of May 10, 1947. Rudolph BAXLEY is a white

male, approximately 6' 1" tall, with grey hair. He is 78 years old, with a date of birth of February 28, 1946. The search shall not include a strip search or body cavity search.

The search would also include a black 2022 Ford Bronco vehicle, identified by North Carolina license plate LAZ8425, if present at the SUBJECT PREMISES. This vehicle is registered to Constance Autry BAXLEY, with VIN 1FMEE5JR9NLA52083. The search would also include a silver 2023 Ford Bronco vehicle, identified by North Carolina license plate VDT5314, if present at the SUBJECT PREMISES. This vehicle is registered to Southern Plantation Properties Holding LLC, with VIN 1FMEE5JR3PLC04099. The search would also include the following additional vehicles if located on the SUBJECT PREMISES at the time of the search.

a.  White 2022 RAM VIN 3C6UR5FL2NG228436

b.  White 2019 Mercedes Benz S560 VIN WDDUG8DB9KA461949

c.  White 2022 Ford F250 VIN 1FT8W2BT4NEC41719

d.  Gray 2012 Bentley Continental VIN SCBFR7ZA2CC072201

e.  White 2020 GMC Denali Sierra 2500 VIN 1GT49REY4LF103997

f.  White 2019 Chevrolet Grand Sport Corvette VIN 1G1YZ3D7XK5108691

g.  White 2020 GMC Sierra 2500 VIN 1GT49REY4LF140628

h.  White 2018 Mercedes Benz S560 VIN WDDUG8DB8JA392007

## ATTACHMENT B

### Particular Things to be Seized

This warrant authorizes (i) the search of the location described in Attachment A, above, for only the following and (ii) authorizes the seizure of the items listed below only to the extent they constitute the following:

    a.    evidence of the Subject Offense(s) as defined herein; or

    b.    any item constituting contraband due to the Subject Offense(s), fruits of the Subject Offense(s), or other items possessed whose possession is illegal due to the Subject Offense(s); or

    c.    any property designed for use, intended for use, or used in committing the Subject Offense(s).

The Subject Offenses, as that term is used herein, are offenses committed by, between, or among individuals Barrett Christian Baxley, Rudolph Leonard Baxley Jr. and Constance Autry Baxley ("Target Subjects") and entities Baxley Construction Co LLC, Southern Plantation Properties Holding LLC, and Grady White Boats, LLC ("Subject Entities"), between April 26th, 2019 and the date of this warrant, specifically:

    a.    Bank Fraud, in violation of Title 18, United States Code, Section 1344;

    b.    False Statements on Loan Applications, in violation of Title 18, United States Code, Section 1014;

    c.    Mail Fraud, in violation of Title 18, United States Code, Section 1341;

    d.    Wire Fraud, in violation of Title 18, United States Code, Section 1343, and;

    e.    Conducting Transactions in Criminally Derived Property, in violation of Title 18, United States Code, Section 1957.

Subject to the foregoing, the items authorized to be seized are defined as follows:

    a.    Any and all documentation relating to the formation of the Subject Entities.

    b.    Any and all documentation relating to the structure, personnel, finances, and operation of Subject Entities.

    c.    Financial records relating to the Target Subjects and Subject Entities identified as the following:

B-3

i.  Books, QuickBook files, records, ledgers, journals, statements, reecipts, invoices, billings, financial statements, balance sheets, notes, and work papers for the Subjects;

ii.  Memoranda, applications, documents, powers of attorney, and listings, which contain financial information, such as income, expenses, assets, liabilities, transfer of money, clients, or accounts for the Subjects;

iii.  Bank and other financial institution records, including bank statements,passbooks, deposit slips, deposited items, withdrawal slips, cancelled checks, transfers of funds, bank receipts, bank checks, casheir's checks, money order receipts, wire transfers, credit and debit memos,and safe deposit keys and records relating to the Subjects;

iv.  Bank and other financial institution records, showing acquisition, conversion, movement, secreting, transfer and disbursement of Ubited States and foreign currency by, between, among, or to the Subjects;

v.  Records of purchase and sale of assets and investments including stocks, currency, and other securities, including statements and receipts by the Subjects;

vi.  Records of real estate transactions, including contracts, agreements, settlement sheets, deeds, rental agreements, leasing rights, lease agreements, payments, and receipts of money, by or on behalf of the Subjects;

vii.  Records of loans or letters of credit including contracts, mortgages, notes, agreements, applications, payments, and financial statements by, between , among or to the Subjects;

viii.  Credit and debit card invoices, including records of purchases, withdrawals, deposits and cash avances made with credit and debit cards, and including statements and receipts by, between, among, or to the Subjects.

ix.  Records of purchase and/or financing of assets, including statements, receipts, titles, and payment records by or on behalf of the Subjects;

x.  Records of expenditures, including payments, receipts, invoices, statements, photographs, and other documentation of the expenditures by or on behalf of the subjects;

B-4

xi.    Records indicating the purchase, lease, rental, possession, or maintaining of equipment, vehicle inventory, capital assets and any other assets by or on behalf of the Subjects;

xii.    All documents relating to the purchase, sale and financing of vehicles, to include vehicle information(i.e. make, model, price), purchase orders, titles, sales contracts, repair and work orders, invoices, vehicle inventory listings, loan or financing agreements, sales and marketing materials, listings of customer and/or customer folders, as well as documents relating to default rates, standards for loaning or financing, and income or profits received from financing by or on behalf of the Subjects or their agents;

d.    Employment/Contractor records and personnel files relating to the Target Subjects, defined as employees lists, names, addresses, and duties of employees, applications, Forms W-2, W-3, W-4, 1099, employment tax returns, ledgers, payroll journals, payroll records, compensation plans, incentive plans, performance appraisals, time sheets, work schedules and correspondence;

e.    Any strategic documents and notes for the Target Subjects;

f.    All documents relating to the trust indenture agreements by or for the benefit of the Target Subjects;

g.    Storage facility records, safe deposit box and keys for the Target Subjects;

h.    Records of forming and operating corporations, partnerships, trusts, limited liability companies, associations, businesses, and any other entities concerning the Target Subjects, along with contracts, agreements, articles of incorporation or formation, minutes of meetings of the board of directors, ifficers, partners, or members, partnership agreements,financial records,business filings, and documents identifying the shareholders, officers, members, and/or directors of the businesses as well as their titles, ownership percentages, and/or number of shares owned;

i.    Address books, telephone books, rolodex indices, lists, and any papers reflecting names, addresses, telephone numbers, pager numbers, fax numbers, e-mail addresses, and web sites of possible clients, customers, vendors, creditors, financial institutions, and other individuals or businesses with whom a financial or business relationship exists relating to the Target Subjects;

j.    Appointment books, calendars, and any paper reflecting meetings or contact with or between the Subject Individuals and and agents of the Subjects, including records relating to clients, customers, vendors, creditors, financial institutions,

B-5

insurers, government payors, and other individuals or businesseswith whom a financial or business relationship exists relating to the Target Subjects;

k.  All digital recordings (both audio and/or visual) created, transferred, or mainatined by the Target Subjects;

l.  Signatures stamps for the Target Subjects;

m.  United States currency, foreign currency, coin collections, precious metals, financial instruments, including stocks, bonds, negotiable bank checks, bank drafts, cashier's checks,money orders or any other negotiable instruments;

n.  Any books, bank records, records, receipts, notes, ledgers, or other documents relatd to the acuisition, purchase, transportation, secreting and/or movement of United States and foreign currency, both domestically and internationally, to and from, by or between, any of the Target Subjects;

The items described above include whatever form, and by whatever means, such items, their drafts, or their modifications may have been created or stored, including, but not limited to, any handmade form (such as writing); any photocopies; any mechanical form (such as printing or typing); or any electrical , electronic, or magnetic form of data (such as any information on an electronic or magnetic storage device, such as floppy diskettes, hard disks, CD-ROMs, DVDs or printer buffers, as well as printouts or readouts from any magnetic storage device).

In addition, computer hardware, software, documentation, passwords, data security devices, and data (as more fully described below and in the Affidavit in support of the search warrants) are also to be seized and searched off-site in the manner described in the affidavit, including the use of "mirroring", "imaging" and/or replication.

Therefore, the items to be seized include:

Electronic devices that are capable of analyzing, creating, recording, displaying, or transmitting electronic or magnetic computer impulses or data. These devices include computers, cell phones, "smart" phones, telephones, electronic organizers, personal digital assistants (PDAs), electronic music players, electronic readers/tablets, fax machines, computer components, computer peripherals, word processing equipment, modems, monitors, printers, plotters, encryption circuit boards, optical scanners, external hard drives, and other computer-related electronic devices.

Instructions or programs stored in the form of electronic or magnetic media that are capable of being interpreted by a computer or related components. The items to be seized include operating systems, application software, utility programs, compilers, interpreters, and other programs or software used to communicate with computer hardware or peripherals either directly or indirectly via telephone lines, radio or other means of transmission.

B-6

Written or printed material that provides instructions or examples concerning the operation of a computer system, computer software and/or any related device.

Information and/or data stored in the form of magnetic or electronic coding on computer-related equipment. This media includes floppy disks, diskettes, fixed hard disks, removeable hard disk cartridges, tapes, laser disks, video cassettes, and any other media which are capable of storing magnetic or digital code.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

**Biometric Access Protocols**

If agents executing this search warrant encounter a device that is subject to search and seizure pursuant to this warrant and may be unlocked using biometric features, this search warrant would permit law enforcement personnel to (1) press or swipe the fingers (including thumbs) of any individual, who is found at the subject premises and reasonably believed by law enforcement to be a user of the device, to the fingerprint scanner of the device; and (2) hold the device in front of the face of said individuals and activate the facial recognition feature, for the purpose of attempting to unlock the device in order to search its contents as authorized by this warrant. However, the foregoing authorization is limited to attempts by law enforcement to access devices reasonably believed to be in the possession, custody, or control of the Subject Individuals and Subject Entities, and their agents, employees, and contractors, who are encountered during Execution of this Warrant at the Subject Premises.

B-7